IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ANTONIO DOLL,

    Plaintiff,

v.                                                                                      CASE NO. 4:13-cv-646-RH-GRJ

MICHAEL D. CREWS, et al.,

    Defendants.

_____/

## REPORT & RECOMMENDATION

Pending before the Court is Defendants' Motion for Summary Judgment, Doc. 67. Plaintiff has filed a response in opposition, Doc. 72, and therefore the motion is ripe for review. For the reasons discussed below, the undersigned recommends that Defendants' motion be granted.

### I. Background

Plaintiff is an inmate in the custody of the Florida Department of Corrections ("FDOC"), currently housed at Graceville Work Camp. On November 22, 2013, Plaintiff initiated this action by filing a *pro se* complaint pursuant to 42 U.S.C. § 1983. Plaintiff named seven defendants and alleged that their actions caused him to be unlawfully detained past the expiration of his sentence. As relief, Plaintiff requested compensatory damages and to be released from custody. Doc. 1.

On April 17, 2014, this Court directed Plaintiff to amend his complaint because

he failed to state a cognizable § 1983 claim.[1]  Doc. 17 at 3.

On April 27, 2014, Plaintiff filed an amended complaint—asserting the same facts but this time naming three defendants: Michael Crews, then Secretary of the FDOC; John Barfield, Warden of Jackson C.I.; and Heath Holland, Assistant Warden of Jackson, C.I., where Plaintiff was then housed.  Doc. 18.  Plaintiff contends that Defendant Crews "neglected to follow a court's order," which purportedly mandated Plaintiff's release in 2010.  Doc. 18 at 5, 12.  Plaintiff asserts that Defendants Barfield and Holland failed to abide by a trial court's sentencing order.  Doc. 18 at 5, 6.  Plaintiff alleges that these actions have resulted in his unlawful imprisonment beyond the term of his sentence.  Doc. 18.

Plaintiff brings claims for violation of "equal treatment," violation of his due process rights, and for cruel and unusual punishment in violation of his constitutional rights.  Doc. 18.  For relief, Plaintiff requests one million dollars for each year that he has been imprisoned in excess of his sentence.  Doc. 18 at 10.  He no longer requests to be released from custody.  Doc. 18 at 10.

On May 13, 2014, the undersigned recommended dismissal of this action.  Doc. 21.  The district judge entered a dismissal without prejudice on different grounds from those in the report.  Doc. 24.

Plaintiff filed a motion for relief from judgment, on the grounds that the Court misinterpreted a January 14, 1994 *nunc pro tunc* order, which purportedly should have

---

[1] Plaintiff's original § 1983 complaint was a challenge to the fact of his imprisonment and, therefore, "his sole federal remedy [was] a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); Doc. 17 at 2-3.

resulted in Plaintiff's release.  Doc. 25.  The Court invited the Attorney General to respond to Plaintiff's motion for relief from judgment because the Office of the Attorney General normally represents the Department of Corrections and its employees in such actions.  Doc. 30.

The Attorney General did not respond, and the dismissal was thus vacated and the case reinstated.  Doc. 35.  Service of process was directed on Defendants Crews, Barfield, and Holland.  Doc. 36.

## II.  Summary Judgment Evidence

Defendant's motion and exhibits provide Plaintiff's state court procedural history, which is important to the resolution of the motion.[2]  Plaintiff does not contest the accuracy of the state court history provided by Defendants.  Doc. 72.

On November 27, 1991, Plaintiff was charged by Information on four counts relating to an armed robbery.  Doc. 71-7 at 18-20.  After a jury trial in the Eleventh Judicial Circuit Court, he was found guilty as to counts one and three.  Doc. 71-7 at 21. On December 4, 1992, Plaintiff was sentenced to thirty years as to count one and ten years as to count three. The ten year sentence was to be served consecutive to the thirty year sentence but the amount of time for the minimum mandatory sentences was to be served concurrently.  The sentencing court transcript establishes that the court ordered Plaintiff to serve a minimum mandatory term of fifteen years as to count one and a minimum mandatory term of three years as to count three.  Doc. 71-2 at 16. However, the written sentencing order reflected minimum mandatory terms of three

---

[2] Exhibits to Defendants' summary judgment motion are contained in Doc. 71.

years as to both counts.  Doc. 71-7 at 28-29.  On January 13, 1994, *nunc pro tunc* to December 4, 1992, the trial court corrected Plaintiff's sentence as follows: "The defendant is sentenced as a violent habitual offender with fifteen (15) years of minimum mandatory imprisonment as to count 1."  Doc. 71-7 at 31. Notably, the correction of the sentence in Count I to reflect the correct minimum mandatory did not make any difference in Plaintiff's basic gain time eligibility because Plaintiff already was excluded from receiving any basic gain-time on the thirty year sentence because he was designated as a habitual violent felony offender. Fla. Stat. § 775.(4)(e) (1992).[3]

Plaintiff filed a Petition for Writ of Mandamus on November 7, 2011, in the Second Judicial Circuit Court.  Doc. 71-2 at 1.  In the filing, Plaintiff argued that he was due to be released immediately, and supported his assertion by attaching the *nunc pro tunc* order issued by the sentencing court designating the sentence for count one as a minimum mandatory term of fifteen years imprisonment.  Doc. 71-2 at 21.  The thrust of Plaintiff's argument was that this order vacated the original thirty year sentence as to count one and replaced it with a fifteen year sentence, and therefore his sentence had been fully served and the FDOC was unlawfully confining him.  Doc. 71-2 at 6.

Because Plaintiff was alleging that he was being illegally detained and was requesting release, the Second Judicial Circuit construed the action as a Petition for Writ of Habeas Corpus, and transferred it to the Fourteenth Judicial Circuit Court, where Plaintiff was then imprisoned.  Doc. 71-4 at 1.  The Fourteenth Judicial Circuit

---

[3] While Habitual violent felony offenders are not entitled to basic gain time they are entitled to earn incentive gain time, which can accrue at a maximum of 20 days per month. *See,* Fla. Stat. § 944(4)(b).

designated the case number 12-108 CA., and on March 5, 2012, ordered the FDOC to serve a response.  Doc. 71-5 at 1.

The FDOC filed a response on June 28, 2012, which outlined Plaintiff's sentence structure and release date,[4] incorporating the relevant documents as exhibits.  Doc. 71-7.  The response asserted that the order modifying Plaintiff's sentence as to count one, Doc. 71-7 at 31, did not modify the thirty year sentence; instead, it corrected the originally documented mandatory minimum sentence of three years to fifteen years.  Doc. 71-7 at 6.  This correction was in line with the oral pronouncement[5] from Plaintiff's sentencing hearing.  Doc. 71-2 at 16; Doc. 71-7 at 6.  On August 20, 2012, the Fourteenth Judicial Circuit Court denied Plaintiff's petition on the merits, finding the FDOC's analysis of Plaintiff's sentence to be correct.  Doc. 71-8.

On October 5, 2012, Plaintiff inquired with the clerk as to the status of his case, claiming that he never received an order ruling on his petition.  Doc. 71-9 at 1.  He next filed a Motion to Invoke Administrative Action on October 15, 2012, after being informed by family members that his petition had been denied, requesting information regarding his right to appeal the order.  Doc. 71-10.

On October 23, 2012, Plaintiff filed a Motion for Rehearing/Clarification of the August 20, 2012 order.  Doc. 71-12.  Plaintiff's motion for rehearing was denied on November 5, 2012, in an order noting that the motion was both untimely and failed to

---

[4] An affidavit submitted by the FDOC establishes Plaintiff's "Tentative Release Date" as November 16, 2027, as calculated on June 8, 2012.  Doc. 71-7 at 14-14.

[5] "THE COURT: It's 30 with a 15 year minimum mandatory on count one and 10 with a 3 year minimum mandatory on count three to run concurrently."  Doc. 71-2 at 16.

raise any new arguments or meritorious allegations. Doc. 71-12.

On November 19, 2012, Plaintiff filed a Petition for Writ of Certiorari to the First District Court of Appeal. Doc. 71-13. On January 11, 2013, the First DCA *per curiam* denied Plaintiff's petition, citing to *Powell v. Fla. Dep't of Corr.*, 727 So.2d 1103 (Fla. 1st Dist. Ct. App. 1999) (holding that the belated appeal rule, Fla. R. App. P. 9.140, does not apply to civil proceedings). *Doll v. Fla. Dep't of Corr.*, 106 So.3d 955 (Fla. 1st Dist. Ct. App. 2013).

Plaintiff filed a "Complaint" in the Fourteenth Judicial Circuit on November 13, 2012 in case number 12-108CA, protesting the August 20, 2012 order denying Plaintiff's habeas petition and repeating the allegations of his earlier petition. Doc. 71-15; Doc. 71-16 at 1. Plaintiff then filed a Notice of Intent to Pursue Default Judgment on December 31, 2012. Doc. 71-16. On January 8, 2013, the Fourteenth Judicial Circuit dismissed without prejudice: (1) the complaint as inappropriately filed; (2) Plaintiff's Notice of Intent to Pursue Default Judgment as the parties had not been properly served with the new complaint; and (3) Plaintiff's previously filed Motion to Invoke Administrative Action as untimely. Doc. 71-16.

On January 24, 2013, Plaintiff filed a Motion for Relief From Judgment pursuant to Fla. R. Civ. P. 1.540. Doc. 71-17. He next filed a motion for summary judgment on March 18, 2013, and then a motion to invoke administrative action on May 23, 2013; Plaintiff also filed a new civil complaint on May 28, 2013 all in the Fourteenth Judicial

Circuit. Doc. 71-19; Doc. 71-20 at 1.[6] On September 30, 2013, the Fourteenth Circuit entered an order: (1) denying Plaintiff's January 24, 2013 motion for relief from judgment and May 23, 2013 motion to invoke administrative action; (2) dismissing Plaintiff's March 18, 2013 motion for summary judgment; and (3) striking Plaintiff's May 28, 2013 civil complaint. Doc. 71-20.

Plaintiff appealed that order on October 23, 2013. Doc. 71-21. The First DCA *per curiam* dismissed the appeal on February 6, 2014. *Doll v. Fla. Dep't of Corr.*, 134 So.3d 454 (Fla. 1st Dist. Ct. App. 2014).

Plaintiff also filed a Petition for Writ of Certiorari and Petition for Writ of Prohibition in the First DCA. Doc. 71-22; Doc. 71-23. The Petition for Writ of Certiorari was denied January 30, 2014; Plaintiff's motion for rehearing was denied March 11, 2014. *Doll v. Fla. Dep't of Corr.*, 133 So.3d 932 (Fla. 1st Dist. Ct. App. 2014). The Petition for Writ of Prohibition was denied on April 21, 2014. *Doll v. Fla. Dep't of Corr.*, 136 So.3d 1217 (Fla. 1st Dist. Ct. App. 2014).

Plaintiff sought review of the denial of his Petition for Writ of Prohibition in the Florida Supreme Court. Doc. 71-24. The court dismissed Plaintiff's appeal on June 4, 2014 for lack of jurisdiction. Doc. 71-24; *Doll v. Fla. Dep't of Corr.*, 145 So.3d 823 (Fla. 2014).

Plaintiff attached the following exhibits to his Response to Defendant's motion for

---

[6] Plaintiff's May 23, 2013 motion to invoke administrative action and May 28, 2013 civil complaint are not included in the record before the Court. However, the Fourteenth Judicial Circuit notes the documents' existence in an order filed September 26, 2013. Doc. 71-20.

summary judgment: (1) the sentencing court's January 13, 1994 *nunc pro tunc* order; (2) the transcript from the sentencing court; (3) his original sentencing papers as to count two; (4) several notices of judicial action and correspondence with the FDOC; (5) administrative grievances and their replies; and (6) two brief emails between FDOC employees in which they are seeking to determine which division of the FDOC must respond to one of Plaintiff's filings. Doc. 72.

### III. Summary Judgment Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988). As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth,* 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250

(1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785-86 (11th Cir. 2005).

In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgement stage." *Beard v. Banks, 548 U.S. 521, 530 (2006).* Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See, e.g., Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001.)

## IV. Discussion

Defendants request summary judgment arguing that the Court lacks jurisdiction or should abstain from jurisdiction; Plaintiff's claims are without merit; and Defendants are entitled to qualified immunity. Doc. 67. Defendants contend that the Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine or in the alternative, the Court should abstain from exercising jurisdiction under the *Younger* abstention doctrine. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Younger v. Harris*, 401 U.S. 37 (1971).

"The *Rooker–Feldman* doctrine provides that federal district courts have 'no authority to review final judgments of a state court . . . .'" *Lozman v. Riviera Beach, Fla.*, 713 F.3d 1066, 1072 (11th Cir. 2013). The scope of the doctrine is limited to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting

district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

For the *Rooker-Feldman* doctrine to apply here, the Court must be satisfied that state-court proceedings have concluded and that Plaintiff is a "state-court loser complaining of injuries caused by state-court judgments . . . ." *Velazquez v. S. Fla. Fed. Credit Union*, 546 F. App'x 854, 856-57 (11th Cir. 2013);[7] *Lozman*, 713 F.3d at 1072.

First, it must be determined whether Plaintiff's state-court proceedings ended. *Velazquez*, 546 F. App'x at 857. Cases in state court are deemed ended:

> (1) when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved, (2) if the state action has reached a point where neither party seeks further action, and (3) if the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated.

*Nicholson v. Shafe*, 558 F.3d 1266, 1275 (11th Cir. 2009). If any of the three tests are satisfied, then state court proceedings are deemed ended for *Rooker-Feldman* purposes. *See Velazquez*, 546 F. App'x at 857 (holding that state-court proceedings had ended for *Rooker-Feldman* purposes where only one of the three *Nicholson* tests is satisfied).

In this case, Plaintiff filed a state court petition on November 7, 2011, asserting that his sentence had expired due to the sentencing court order entered on January 13, 1994, which Plaintiff claims replaced his thirty year sentence with a fifteen year

---

[7] Pursuant to 11 Cir. R. 36-2, unpublished opinions are not binding precedent, but may be cited as persuasive authority.

*Case No: 4:13-cv-646-RH-GRJ*

sentence. Doc. 71-2. In its final order filed August 20, 2012, the state circuit court rejected Plaintiff's interpretation of the order in favor of the interpretation supplied by the FDOC. That interpretation is that the order corrected a scrivener's error in the original sentencing papers to reflect the oral pronouncement of the sentencing court. Doc. 71-7. The First DCA *per curiam* denied Plaintiff's certiorari petition. *Doll*, 106 So.3d 955.

After a litany of motions, appeals, and certiorari petitions, Plaintiff's state court filings ceased after Plaintiff's Petition for Writ of Certiorari and Petition for Writ of Prohibition were *per curiam* denied by the First DCA on March 11, 2014 and April 21, 2014, respectively. *Doll*, 133 So.3d 932; *Doll*, 136 So.3d 1217.

Accordingly, there is no question that the first test has been satisfied, as evidenced by the First DCA's *per curiam* denial of Plaintiff's Petition for Writ of Certiorari stemming from the August 20, 2012 judgment of the state circuit court. *See Nicholson*, 558 F.3d at 1275; *Doll*, 106 So.3d 955. The First DCA was the highest state court where review was available. *See Powell*, 727 So.2d 1103.

As evidenced by the summary judgment exhibits provided by Defendants and not challenged by Plaintiff, Plaintiff's state court actions were completed upon the First DCA's and Florida Supreme Court's denial of Plaintiff's petitions and appeals. *Doll*, 145 So.3d 823; *Doll*, 133 So.3d 932; *Doll*, 136 So.3d 12177; Doc. 71. To the extent that Plaintiff might seek further action, it would necessarily involve a new state action. Therefore, the second *Nicholson* test is also satisfied. *See Nicholson*, 558 F.3d at 1275.

The third *Nicholson* test is likewise satisfied. *See Nicholson*, 558 F.3d at 1275;

Doc. 71. As discussed above, Plaintiff alleged the same facts in his § 1983 complaint—that he is being held beyond the expiration of his sentence—as were litigated and finally resolved in state court, and thus no federal questions remain to be litigated. Doc. 18; Doc. 71.

Having resolved that the state court proceedings had concluded, next it must be determined whether Plaintiff is a "state-court loser complaining of injuries caused by state-court judgments . . . ." *Velazquez*, 546 F. App'x at 856-57. District courts may not exercise jurisdiction over federal claims that are "inextricably intertwined" with a state court judgment. *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001 ) ("A federal claim is inextricably intertwined with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.") (citing *Siegel v. LePore*, 234 F.3d 1163, 1172 (11th Cir. 2000)). Adjudicating such claims is improper, because the effect would be to nullify state orders. *Id.* at 1332-33 ("The federal courts are not a forum for appealing state court decisions.") (quoting *Staley v. Ledbetter*, 837 F.2d 1016 (11th Cir. 1988)).

The *Rooker-Feldman* doctrine compels dismissal of this case. The subject matter of the instant complaint is nearly identical to the petitions and complaints filed in state court. *See* Doc. 18; Doc. 71-3; Doc. 71-13; Doc. 71-15. Every claim advanced by Plaintiff has stemmed from the premise that the January 13, 1994 order from the sentencing court reduced Plaintiff's sentence from a term of thirty years imprisonment to a term of fifteen years. *See* Doc. 71-3; Doc. 71-13; Doc. 71-15. To the extent that Plaintiff requests relief from this Court, his claims can succeed "only to the extent that

the state court wrongly decided the issues before it" in determining that Plaintiff had not completed his sentence and was not entitled to release. *See Goodman*, 259 F.3d at 1332. Because federal courts have limited jurisdiction over such claims, the Court concludes that Plaintiff's claim is barred by the *Rooker-Feldman* doctrine and therefore Defendants are entitled to summary judgment.

Even if Plaintiff's state cases were ongoing, Defendants would still be entitled to summary judgment based upon the *Younger* abstention doctrine. 401 U.S. 37. The *Younger* doctrine dictates that "absent extraordinary circumstances federal courts should not enjoin pending state criminal prosecutions." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 364 (1989). "[The Supreme] Court has extended *Younger* abstention to particular state civil proceedings that are akin to criminal prosecutions . . . ." *Sprint Comm., Inc. v. Jacobs*, __ U.S. __, 134 S.Ct. 584, 588 (2013); *Likely v. Verschueren*, Case No. 3:13cv517/MCR/EMT, 2014 WL 667711, at *3 (N.D. Fla. Feb. 20, 2014).

Because habeas corpus cases are akin to criminal prosecutions, and Plaintiff's state court action was construed as a petition for writ of habeas corpus,[8] the *Younger* abstention doctrine applies and mandates dismissal. *See Sprint Comm., Inc.*, 134 S.Ct. at 588; *Santana v. United States*, 96 F.3d 752, 754 (11th Cir. 1999) ("Habeas corpus cases are, in effect, hybrid actions whose nature is not adequately captured by the phrase 'civil action'; they are independent civil dispositions of completed criminal

---

[8] Doc. 71-4.

proceedings."); *Roberts v. State*, 840 So.2d 962, 971 (Fla. 2001) ("[H]abeas corpus and other postconviction proceedings . . . are actually quasi-criminal in nature because they are heard and disposed of by courts with criminal jurisdiction.").

In sum, Defendants are entitled to dismissal of Plaintiff's § 1983 claims under the *Rooker-Feldman* doctrine and, in the alternative, the *Younger* abstention doctrine.

### A. Plaintiff's False Imprisonment Claim

Even if Plaintiff's complaint was not due to be dismissed under the doctrines discussed above, his false imprisonment claim would still fail on the merits. Plaintiff alleges that, since the January 13, 1994 sentencing court order reduced his sentence from thirty years to fifteen years, his sentence expired in 2010 and he is currently being falsely imprisoned. Doc. 18 at 7.

Florida law dictates that the "oral pronouncement of a sentence controls over the written sentencing document." *Williams v. State*, 957 So.2d 600, 603 (Fla. 2007). Further, a court may correct a sentencing error "at any time the error is discovered," pursuant to Fla. R. Crim. P. Rule 3.800. *Id.* An order *nunc pro tunc* is used to "correct a prior decree" or supply clarification "when the record of the original proceedings is inaccurate or incomplete." *Test v. State*, 87 So.2d 587, 589 (Fla. 1956); *Williamson v. Geneva, Inc.*, 550 So.2d 8, 10 (Fla. 2d Dist. Ct. App. 1989).

The Court concurs with the Eleventh Judicial Circuit's interpretation of the January 13, 1994 sentencing court's *nunc pro tunc* order correcting the minimum mandatory term of imprisonment as to count one of Plaintiff's sentence from three years to fifteen years. This interpretation is consistent with the oral pronouncement and

established Florida law.  See *Williams*, 957 So.2d at 603; *Test*, 87 So.2d at 589; Doc. 71-7.

Plaintiff's argument completely lacks merit and is belied by the transcript of the sentencing hearing.  The transcript of the sentencing hearing reflects that the trial judge imposed a 30 year term on count I with a 15 year mandatory minimum service provision. The trial judge also imposed a consecutive ten year sentence on count III with a 3 year mandatory provision on this count.  However, the mandatory minimum requirements as to each count were to be served and counted as concurrent. Simply put, Plaintiff was not required to serve a fifteen year mandatory minimum and then serve a consecutive three year mandatory minimum. The sentences on each count, however, were to served consecutively.  The result is that the Plaintiff received a forty year sentence in total.

When the written sentence was issued it incorrectly reflected that Plaintiff was subject to a three year minimum mandatory sentence in count I, rather than the 15 year minimum mandatory sentence that the Court had announced. That is the reason the Court issued the January 13, 1994 order to correct the error in the minimum mandatory as to count I. The January 13, 1994 order correctly reflected that the minimum mandatory sentence on count I was fifteen years and not three years.  That is all the corrected order changed. It did not reduce Plaintiff's sentence to fifteen years as he alleges.  Indeed, it is troubling that so much litigation has transpired in the state court—and this case has advanced this far—based upon a claim that has no support and is directly at odds with the oral pronouncement of the sentencing judge.  Be that as

it may the fact is that Plaintiff is serving a forty year sentence, and his release date would appear to be May 15, 2026, as calculated by the FDOC.[9]

Consequently, Defendants' lawful imprisonment of Plaintiff may not support a claim for false imprisonment nor can the imprisonment constitute cruel and unusual punishment. Plaintiff fails to allege facts sufficient to create a genuine issue of material fact as to the effect of the sentencing court's order. *See Rollins*, 833 F.2d at 1528. Plaintiff's conclusory allegations that the order reduced his sentence by half is facially insufficient and not supported by the record. *See Waddell*, 276 F.3d at 1279; Doc. 18; Doc. 71. Accordingly, Defendants are entitled to summary judgment in their favor as to Plaintiff's false imprisonment claim.

## B. Plaintiff's Claims Based on Vicarious Liability

Plaintiff name as Defendants in his complaint Michael Crews, the former Secretary of the FDOC; John Barfield, the Warden of Jackson CI; and Heath Holland, the Assistant Warden of Jackson CI. Doc. 18 at 2. To the extent that Plaintiff alleges liability on a theory of *respondeat superior* or vicarious liability, these claims also must

---

[9] Any suggestion that Plaintiff's term of imprisonment has ended because of gain time also fails. As a habitual violent felony offender Plaintiff is not entitled to a lump sum basic gain time award of 3600 days on his 30 year sentence in count I. Plaintiff is, however, entitled to earn up to 20 days per month in incentive gain time. Fla. Stat. § 944.275(4)(b). However, as evidenced by the affidavit from the FDOC, dated June 8, 2012, Doc. 71-7, pp. 12-15, Plaintiff forfeited 2380 days of gain time because of disciplinary action. Accordingly, even with basic gain time earned on the non-minimum mandatory portion of the ten year sentence and even with additional gain time earned, Plaintiff has not earned enough gain time to finish serving his sentence. As evidenced in the inmate record, filed by the FDOC, Doc. 71-26, Plaintiff's tentative release date (as of March 23, 2015) is May 15, 2026. Accordingly, any argument by Plaintiff that he has earned enough gain time to have finished serving his sentence is nonsense.

fail.

Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability. To be liable, the claimant must show that the official "personally participate[d]" in the act or there was "causal connection between the actions of [the] supervising official and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). To establish such a causal connection, a Plaintiff must allege facts sufficient to "support an inference that the supervisor directed subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Keating v. Miami*, 598 F.3d 753, 762 (11th Cir. 2010). The instant complaint is devoid of facts necessary to support such an inference of supervisory liability and therefore the claims are due to be dismissed.

Plaintiff's claims based on the denial of grievances also fails. To the extent that Plaintiff alleges Defendants Crews, Barfield and Holland caused Plaintiff to be unlawfully imprisoned by denying his grievances, § 1983 does not support liability based on a theory that their failure to act constituted a deprivation of Plaintiff's constitutional rights. *Swift v. Tifft*, Case No. 3:12cv171/RV/CJK, 2013 WL 5913796, at *9 (N.D. Fla. Oct. 31, 2013) ("[M]erely denying a grievance, without personally participating in the unconstitutional conduct . . . is insufficient to establish § 1983 liability."); *McCiskill v. Thompson*, no. 3:10-cv-211-MCR-MD, 2010 WL 4483408, at *4 (N.D. Fla. 2010) (holding that the mere denial of administrative grievances did not establish actionable wrongdoing under § 1983); *Demm v. Charlotte Cty. Jail Admin. &*

*Staff,* no. 2:04-cv-634-FtM-99SPC, 2007 WL 57772, at *4-5 (M.D. Fla. Jan. 5, 2007) (finding that plaintiff failed to state a § 1983 claim where alleged liability was predicated on defendants' responses to grievances). Accordingly, Defendants are entitled to summary judgment with respect to all claims arising under theories of *respondeat superior* or supervisory liability.

### C. Qualified Immunity

Lastly, even if the Court were to find that Plaintiff's continued incarceration was unlawful (which it is not) and Defendants were responsible, Defendants are entitled to qualified immunity from damages.

The qualified immunity doctrine shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). When evaluating a claim for qualified immunity, a court must determine (1) whether the facts alleged, viewed in the light most favorable to the Plaintiff, show that the officer's conduct violated a constitutional right, and (2) whether, under the facts alleged, there was a violation of "clearly established law." *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Qualified immunity protects government officials from liability unless both prongs are satisfied. *Id.*

A constitutional right is clearly established if "its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal citations omitted). The critical

inquiry in determining whether law is "clearly established" is whether the defendant had "fair warning" that his conduct was unlawful. *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002).

Taking Plaintiff's allegations that he was kept in custody despite being entitled to release as true, prong one of the *Pearson* qualified immunity analysis is satisfied. *See Cannon v. Macon Cty.*, 1 F.3d 1558, 1563 (11th Cir. 1993) (recognizing "[t]he constitutional right to be free from continued detention after it was or should have been known that the detainee was entitled to release").

However, the facts alleged fail to establish the violation of a clearly established law, and therefore Defendants are entitled to qualified immunity. *See Pearson*, 555 U.S. at 236. To the contrary Florida law clearly dictates that the oral pronouncement of the court determines the actual sentence to be imposed. *Williams*, 957 So.2d at 603. Further, *nunc pro tunc* orders serve to correct mistakes in the record rather than modify previous orders. *See Test*, 87 So.2d at 589. The FDOC reasonably interpreted the *nunc pro tunc* order—in conjunction with the transcript of the sentencing court—as correcting a scrivener's error rather than reducing Plaintiff's sentence by fifteen years. The assertion that Plaintiff's constitutional rights were clearly violated by the FDOC's implementation of the sentencing court's oral pronouncement and subsequent *nunc pro tunc* order is without merit. There is no clearly established federal law that provides it is unlawful for a prison administrator to rely upon the oral pronouncement and corrective orders from the sentencing court in calculating the sentence of a prisoner. Accordingly, assuming that Plaintiff could establish that his incarceration was unlawful qualified

immunity would shield Defendants from liability.

## V. Recommendation

Based on the foregoing, it is respectfully **RECOMMENDED** that Defendants' Motion for Summary Judgment, Doc. 67, should be **GRANTED**, all pending motions terminated, and the case closed.

**IN CHAMBERS**  this 2nd  day of July 2015.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.